Johnston, Ch.,
delivered the opinion of the Court.
The 10th section of the general corporation Act of 1818,(a) incorporates the Chesterville Academy Society for twenty-one years; and the 11th vests in them escheated property to the extent of $3,000.
A clause in the general corporation Act of 1846,(b) enacts *366 “ that the Act, passed on the 18th day of December, 1818, incorporating the Ohesterville Academy Society, be revived, and continue of force for the period of fourteen years.”
It has been contended, that without a revival of not only the 10th but the 11th sections, the right granted to the Society in the escheated property, was lost to them.
I do not mean to assert that this position is erroneous, — because the point has not been argued. But, in my opinion, it is far from clear. By the expiration of their corporate existence, — by the efflux of their charter, the society certainly lost their corporate capacity; and so were disabled as a corporation from enforcing a remedy against persons who might interfere with then-property or rights. But is it true, that upon the cessation of their charter, all the property and rights of a corporation became lost to them 1 May it not be that they are rather suspended, for want of capacity to assert them : and that they are re-instated by the mere revival of the corporation ? Does not the revivor prevent a breach of continuity in the charter.
But the investigation of this point is unnecessary, because, in my opinion, the reviving statute applies not only to the 10th but to the 11th clause of the Act of 1818.
If the words of the statute of 1846 are to be applied according to their literal meaning, neither the 10th nor the 11th clause is revived. That statute professes to revive an Act of a particular date by the title of an Act incorporating the Ohesterville Academy Society. But no such Act exists, or ever existed. The only Act of that date, relating to corporations is an Act for incorporating sundry societies. Of these the Ohesterville Academy Society is one. We must therefore apply the words of the reviving statute to that Act. But we have no more right to restrict the phraseology of the reviving Act to the 10th clause of it than to apply it to every clause in it. Indeed, a literal construction would compel us to say that the whole Act was revived ; and every society mentioned in it re-incorporated.
This, however, was clearly not the intention of the Legislature, and we are therefore forbidden to adopt a literal construe *367 tion. The Act, of 1846, was manifestly intended to apply to only so much of that of 1818 as related to the Chesterville Academy Society. But having arrived at this conclusion only hy means of a free construction ; are we warranted in re-adopting a narrow construction, for the purpose of limiting the revivor to the clause by which the society was given a corporate character, leaving out another clause by which further privileges were conferred upon it? I think not. Both the clauses in question are to he considered as clauses relating to the incorporation of the society; and are both revived.
Upon the other view suggested in the decree, I am equally clear. The words relating to vesting escheated property are clearly not employed with a studied reference to grammatical rules. “ Hath escheated” has not reference to time preceding the enactment, but is used loosely in reference to the accrual of the right, intended to be vested in the corporation.
It is ordered that an account be taken of the value of escheat-ed property already received by the Chesterville Academy Society ; and, if found to be less than they were entitled to receive under their charter, that John L. Harris, administrator de bonis non of James M. Egger, and Reubin Cassels, administrator of William Kirkpatrick, former administrator of said Egger, do account for the assets of said Egger’s estate, and, according to the amount thereof chargeable to them, respectively, in a due course of administration, apply said assets towards making Up the amount of escheated property to which said Society (taking into computation what it may have already received) is by its charter entitled.
The costs to be paid as directed by the Chancellor’s decree now under view.
Dunkin, Dargan and Waedlaw, CC. concurred.
Decree modified.

 8 Stat. 296-7.

 11 Stat. 397.